1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12
13
14
15
16

SHIRLEY JACKSON

Plaintiff,

v.

EJB FACILITIES SERVICES, INC. and
JOHNSON CONTROLS / IAP,

Defendants.

Case No. C07-05358 RBL

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

THIS MATTER is before the Court on Motions for Summary Judgment filed by defendants EJB and
IAP. [Dkt. # 45, Dkt. # 50] For reasons explained below, the Court GRANTS the Defendants IAP's and EJB's
join Motions for Summary Judgment on all of Plaintiff's claims. Plaintiff's claims are dismissed.

## II. BACKGROUND

Plaintiff Shirley Jackson was employed as a part-time bus driver by defendant Johnson Controls / IAP
from 1999 until her layoff in January 2006. IAP had a transportation contract with the United States Navy,
in part to provide transportation services to civilian and military personnel through Bangor Submarine Base
and other locations in Kitsap County, Washington. In September 2001, Ms. Jackson filed a sexual harassment
complaint against Terry Vague, an IAP employee, for "inappropriate touching" of her hips, waist, and neck.
[Decl. of Jackson ¶ 17 Dkt. #56] An investigation was conducted by IAP and Ms. Jackson received a letter

from IAP's human resources department stating that the investigation did not substantiate her claim. [Decl. of Jackson ¶ 17 Dkt. # 58] Ms. Jackson alleges that some harassing behavior continued until March 11, 2002.[1] [Decl. of Jackson ¶ 18-19 Dkt. # 58]

From 2001 through January 2006, Ms. Jackson made additional complaints regarding inadequate accommodation and safety measures for women drivers, and she now claims that she was subjected to malicious scheduling practices in retaliation for her 2001 sexual harassment complaint. [Amended Complaint Dkt. # 20] Ms. Jackson also claims that IAP's bus scheduler was verbally abusive to her in 2002. [Amended Complaint Dkt. # 20] Ms. Jackson complained to her union, and this scheduler was removed from his position by mid-2003. [Dkt. # 45, Jackson Tr. 18:11-12]

IAP disputes all allegations of retaliatory or disparate treatment toward the plaintiff during this period. [Dkt. # 45] Ms. Lee, IAP's bus scheduler, claims that Ms. Jackson was excluded from the trash truck, Indian Island and night routes because Ms. Jackson asked to be excluded, and that Ms. Jackson was excluded from base tour routes because Naval personnel complained that Ms. Jackson conducted unauthorized security checks on passengers. [Decl. of Lee ¶ 5-6 Dkt. # 48]   Ms. Jackson received a wage increase every year she was employed by IAP. [Jackson Tr. 22:2-5] Ms. Jackson also received positive performance reviews from 2001 until 2005. [Dkt. # 57]

In 2004, Ms. Jackson claims she was denied a full-time bus driver trainer position for which she had applied in retaliation for her 2001 sexual harassment complaint and because of gender discrimination. [Amended Complaint Dkt. # 20] Ms. Jackson claims Mr. Kirchoffner, her supervisor, told her that only a male would be hired for the driver trainer position. [Amended Complaint Dkt. # 20, Dkt. # 56]   IAP and Mr. Kirchoffner dispute that this comment was made, and provide evidence demonstrating that Ms. Jackson was not qualified for the position. [Dkt. # 45, Kirchoffner Decl. ¶ 22 Dkt. # 46]  A male was eventually hired for the position. [Decl. of Jackson ¶ 21 Dkt. # 58]

In September of 2005, IAP lost the transportation contract with the U.S. Navy to defendant EJB Facilities Services, effective February 1, 2006.  All IAP employees were to be laid off on January 31, 2006, though EJB would rehire most to perform its contract on the base.

---

[1]Ms. Jackson claims that on March 8, 2002, and again on March 11, 2002, Mr. Vague intentionally swerved towards her in a truck in order to harass her. [Decl. of Jackson ¶ 18-19 Dkt. # 56] She does not and cannot claim that this incident was sexual in nature.

On October 3, 2005, Ms. Jackson received a disciplinary notice for not performing her bus runs correctly on September 16 and 23, 2005. [Decl. of Epling Ex. J Dkt. #51] Ms. Jackson claims this discipline was retaliation for filing the sexual harassment complaint in 2001. [Amended Complaint Dkt. # 20, Dkt. # 57]

IAP laid off all employees who worked at Bangor Submarine Base on January 31, 2006. Ms. Jackson applied to EJB but was not rehired, though all eight other members of Ms. Jackson's transportation shop who applied were immediately rehired on February 1, 2006. [Jackson Tr. 187:5-23]  Ms. Jackson was the only female part-time driver who applied, and the only person not rehired. [Decl. of Jackson ¶ 13 Dkt. # 58] EJB rehired two full-time female drivers on February 1, 2006, and subsequently hired two female part-time drivers during a later round of hiring. [Dkt. # 50]

Ms. Jackson claims she was intentionally excluded from a rehire list she claims was composed by her supervisors at IAP and given to the EJB hiring committee, in retaliation for her 2001 sexual harassment complaint and because of her gender. [Amended Complaint Dkt. # 20] Defendant IAP denies the existence of a list, and further asserts that Ms. Jackson's supervisors did nothing to hinder her rehire with EJB. [Dkt. # 45] Defendant EJB claims that Ms. Jackson was not rehired because other job candidates had more relevant skills or experience, and denies the existence of a rehire list. [Dkt. # 50]

Plaintiff sued on July 20, 2007 for injunctive relief from EJB, seeking to have her position, benefits, and union seniority restored. She sued IAP for damages, claiming Title VII sexual harassment and hostile work environment. [Amended Complaint Dkt. # 20] Plaintiff also claims Title VII gender discrimination, disparate treatment and impact, and retaliation against both defendants IAP and EJB. [Amended Complaint Dkt. # 20]

Defendants IAP and EJB each filed motions for summary judgment on all claims. [Dkt. # 45, Dkt. # 50] Plaintiff did not respond to Defendant IAP's motion for summary judgment, but the Court will address IAP's motion as it applies to Plaintiff's claims.

### III. STANDARD OF REVIEW

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©).  The moving party is entitled to summary judgment if, after satisfying its initial burden, the non-moving party fails to present

specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable finder of fact could return a decision in the nonmoving party's favor. *Triton Energy*, 68 F.3d at 1220.

## IV. DISCUSSION

### 1. Sexual Harassment and Hostile Work Environment

Defendant IAP seeks Summary Judgment on Plaintiff's claim of sexual harassment, arguing this claim is time barred. [Dkt. # 45] Plaintiff responds that the limitations period applicable to these claims should be tolled because of continuing violations in her workplace. [Dkt. # 56]

Under Title VII, a plaintiff must notify the Equal Opportunity Employment Commission (EEOC) of sexual harassment within 300 days of the occurrence. 42 U.S.C. § 2000(e)(2)(a)(1).[2] Once a "Notice of Right to Sue" is received from the EEOC, the plaintiff must file a lawsuit within 90 days. *Id*. Ms. Jackson alleges that the sexual harassment in question took place before September of 2001. [Amended Complaint Dkt. # 20] The EEOC was not notified of the harassment until October of 2006. Plaintiff's complaint was filed in July of 2007. [Complaint Dkt. # 1] Although Ms. Jackson filed this law suit within 90 days of receiving a "Notice of Right to Sue," the EEOC was not notified of the harassment until more than four years after the alleged incidents took place, well beyond the 300 day statutory limit. *Id*. Ms. Jackson's claim for sexual harassment against defendant IAP is therefore time barred.

Plaintiff's claim cannot be tolled. The Supreme Court has held that "discrete discriminatory acts are not actionable if they are time-barred, even when they relate to acts alleged in timely filed charges." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In the instant case, Ms. Jackson makes no claim and presents no evidence that any sexual harassment continued past September 2001. Instead she claims only

---

[2]There are limited exceptions to this time limit, such as waiver or tolling, but none are applicable to this case. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982).

that she suffered disparate and retaliatory treatment as the result of filing her sexual harassment claim with IAP's human resources department in September 2001. [Amended Complaint Dkt. # 20] Ms. Jackson's continuing violation theory fails to toll her claim of sexual harassment. Plaintiff's claim of sexual harassment against IAP is DISMISSED.

Defendant IAP similarly moves for Summary Judgment on Plaintiff's hostile work environment claim. Plaintiff alleges that she was subject to unwelcome gender-based conduct in the form of adverse scheduling from 2001 until her layoff in 2006, and that this conduct was sufficiently pervasive to create a hostile work environment. [Amended Complaint Dkt. # 20] Ms. Jackson also claims that IAP's bus scheduler prior to 2003 was verbally abusive. [Amended Complaint Dkt. # 20] Defendant IAP denies that the Plaintiff was subjected to any gender-based verbal or physical conduct beyond this incident, or that the Plaintiff was treated any differently than any other employee. [Dkt. # 45]

A hostile work environment is established by showing that (1) the plaintiff was subjected to verbal or physical conduct of a sexual or gender-based nature, (2) this conduct was unwelcome, (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (4) the plaintiff perceived the work environment to be abusive or hostile. *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir.1995). The work environment must be both subjectively and objectively hostile. *McGinest v. GTE Service Corp*., 360 F.3d 1103, 1113 (9th Cir. 2004). The severity of harassment should be viewed from the perspective of a reasonable woman in the shoes of the plaintiff. *Oncale v. Sundowner Offshore Services,* 523 U.S. 75, 78, 118 S. Ct. 998 (1998). When the hostility is caused by an immediate supervisor, the company is vicariously liable. *Nichols v. Azteca Restaurant Enterprises, Inc*. 256 F.3d 864, 875 (9th Cir. 2001).

Similar to Ms. Jackson's sexual harassment claim, her claim that her scheduler was abusive prior to 2003 is time barred as it occurred more than three years before she notified the EEOC. She admits that the verbal abuse occurred only once, and that the scheduler was removed from his position when Ms. Jackson filed a grievance with her union. [Jackson Tr. 17:5-18:21] Ms. Jackson also provides no evidence that the scheduler's conduct was in any way sexual or gender-based. *Id*.

In the instant case there is no evidence in the record before the court to support a Title VII hostile work environment claim. Ms. Jackson has not presented any evidence that she was subjected to negative

physical or verbal conduct because of her gender beyond 2001. She only claims that Mr. Kirchoffner told her to "do what you're told." [Jackson Tr. 75:11-25] From the perspective of a reasonable plaintiff in Ms. Jackson's shoes, this is not a gender-hostile comment.

Ms. Jackson may have subjectively perceived her treatment by her supervisors at IAP to be gender-hostile because she was scheduled to work routes she disliked and given split shifts. Neither of these claims constitute sexual harassment or a hostile work environment. Additionally, these claims do not pass the objective portion of the *McGinest* test. Ms. Jackson admitted during her deposition that her workplace was not pervasively gender hostile, as both men and other women were treated in the way she wished to be treated.[3] [Jackson Tr. 33:19-35:1] The plaintiff has therefore failed to show any pretext in IAP's reasoning for its actions. Defendant IAP's motion for Summary Judgment on Plaintiff's hostile work environment claim is GRANTED, and that claim is DISMISSED.

**2. Retaliation**

**a. Claims against IAP**

Defendant IAP seeks Summary Judgment on Plaintiff's retaliation claim. Ms. Jackson filed a formal complaint with IAP's human resources department in 2001, claiming that she had been sexually harassed by a fellow employee. Ms. Jackson claims that in retaliation for filing this complaint she was subject to malicious scheduling, whereby she was given excessive split shifts, excluded from driving the "good" routes while repeatedly assigned only the "bad" routes, and unfairly disciplined. [Amended Complaint Dkt. # 20, Dkt. # 57]. Ms. Jackson also claims that IAP hindered her rehire with Defendant EJB. *Id.* Defendant IAP responds that the route changes were made at Ms. Jackson's or the military's request and to accommodate the need of scheduling approximately equivalent hours for all part-time drivers. [Dkt. # 45] IAP also argues that the time between Ms. Jackson's 2001 harassment complaint and the disciplinary notice in October 2005 or any alleged retaliatory influence on EJB's 2006 hiring process is too attenuated to support any retaliation claims on those bases. [Dkt. # 45, Dkt. # 59]

Under the *McDonnell Douglas* framework outlined by the Supreme Court, when a plaintiff brings a Title VII claim based on circumstantial evidence, she must first establish a prima facie case of discrimination.

---

[3] To the extent that Ms. Jackson's declaration and opposition motion contradict her previous deposition testimony, defendants' arguments are generally well taken. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

*McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802 (1973). The burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason" for their actions. *Id*. The plaintiff must then prove by a preponderance of the evidence that the stated reasons are pretextual. *Id*. at 804. The 9th Circuit has held that to establish a prima facie case of Title VII retaliation, a plaintiff must meet a three prong test: "(1) the employee was engaged in protected activity, (2) the employee suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Circuit 2002).[4] The causal link cannot be too attenuated to warrant an inference of causation. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987).

Ms. Jackson has not established a prima facie case of retaliation for the scheduling practices of IAP. While she has established that she received what she claims were less desirable routes or schedules from 2003 through 2005, nothing in the record indicates that it had anything to do with her 2001 sexual harassment complaint. Indeed, Ms. Jackson admits that all part-time drivers were assigned split shifts. [Jackson Tr. 51:1-9]

IAP also presents evidence that when Ms. Jackson was excluded from specific routes or activities, it was because of her own direct requests or complaints by the military about her performance. [Dkt. # 45, Decl. of Lee ¶ 5-6 Dkt. # 48, Decl. of Kirchoffner ¶ 11 Dkt. # 46] Specifically, Ms. Lee and Mr. Kirchoffner testify that Ms. Jackson asked to be removed from the "trash truck" and night runs, and that Ms. Jackson conducted unauthorized security checks on passengers during a base tour. *Id*. Ms. Jackson admits that she does not know the reason she was excluded from these runs, and does not present any evidence that her exclusion was in retaliation for her 2001 harassment complaint. [Jackson Tr. 35:2-10]

IAP additionally provides evidence that Ms. Jackson was assigned to the guard change run because it required a security clearance, which Ms. Jackson possessed.[Dkt. # 45, Decl. of Lee ¶ 9-10 Dkt. # 48] Ms. Lee testifies that Ms. Jackson was not scheduled to drive the run more frequently than other cleared drivers. *Id*. Ms. Jackson argues that she was scheduled to do guard change runs more often than other drivers but she has not provided any evidence of the frequency at which other drivers performed the runs. [Dkt. # 57] She claims that she disliked the run because the marines on the base were often armed and used profanity. [Jackson Tr.46:4-47:5] Ms. Jackson admits that, at some point, she enjoyed doing the guard change runs and did not consider the assignment to be adverse. [Jackson Tr. 41:5-14, 45:20-46:3]

---

[4]Also see Ninth Cir. J. I. 10.3.

Ms. Jackson also contends that she was the victim of unwarranted discipline in October 2005 in retaliation for her 2001 sexual harassment complaint. [Dkt. # 56] IAP responds that discipline was warranted when Ms. Jackson unilaterally changed her bus routes on September 16 and 23, failing to pick up passengers or appear at scheduled locations. [Decl. of Kirchoffner ¶ 12 Dkt. # 46, ] Indeed, Plaintiff's diary entries indicate that she did so knowingly and purposefully, and she never contested the discipline. [Second Decl. of Tift Ex. 1 Dkt. # 60] Furthermore, a span of four years between Ms. Jackson's protected activity and the discipline is too attenuated to reasonably support a claim of retaliation as a matter of law. *See Yartzoff*, 809 F.2d at 1376.

Finally, Plaintiff claims that IAP retaliated against her by hindering her rehire with EJB and excluding her from a "rehire list." [Amended Complaint Dkt. # 20] IAP responds that its employees had no contact or discussion with anyone on EJB's hiring committee regarding the rehire of any IAP employee. [Dkt. # 45] In reply, Ms. Jackson provides inadmissible hearsay that some EJB and IAP employees told her that a list existed. [Decl. of Jackson ¶ 5-8 Dkt. # 56] Mr. Kirchoffner, Ms. Lee and Mr. Hennessey deny that anyone at IAP had any input on EJB hiring decisions or that a retention list existed. [Decl. of Kirchoffner ¶ 18-19 Dkt. # 46, Decl. of Lee ¶ 18-19 Dkt. # 48, Decl. of Hennessey ¶ 9-10 Dkt. # 47] Ms. Jackson admits that she never saw any list, cannot be sure that such a list really existed, and does not know who would have composed such a list. [Jackson Tr. 147:15 - 149: 16] Ms. Jackson further admits that even if a rehire list did exist, she does not know why she was excluded. *Id.* Ms. Jackson's mere assertion that a retention list existed, and that the unnamed author of this excluded her in retaliation for a sexual harassment complaint more than four years before, is pure speculation and is not sufficient to meet her burden on summary judgment.

Plaintiff's retaliation claims against IAP are therefore DISMISSED.

**b. Claims against EJB**

Defendant EJB also seeks Summary Judgment on Plaintiff's retaliation claim. Plaintiff claims that she was not rehired after EJB took over the Bangor Base contract in retaliation for her 2001 harassment complaint with IAP. [Amended Complaint Dkt. # 20]  Ms. Jackson claims that her supervisors at IAP intentionally excluded her from a "rehire" list they composed and gave to EJB's hiring committee. [Amended Complaint Dkt. # 20, Dkt. # 57] Defendant EJB responds that no rehire list ever existed, and no one at EJB consulted with anyone at IAP regarding hiring decisions. [Dkt. # 50] EJB also explains that the reason Ms. Jackson was not rehired was because of the relative skills of the other applicants. *Id*.

There is no admissible evidence of such a rehire list, and both IAP and EJB deny that such a list existed. [Dkt. # 45, Dkt. # 50] Ms. Jackson asserts that multiple employees of both IAP and EJB knew of or saw the rehire list. [Decl. of Jackson ¶ 5-11 Dkt. # 58] No evidence other than hearsay statements in Ms. Jackson's declaration has been submitted to support the existence of a list. *Id.* Defendant EJB responds that no list was ever composed or given to its hiring committee, and that its decision not to rehire Ms. Jackson rested on the relative skills and experience of all applicants rather than any lingering animosity toward her. [Dkt. # 50] Furthermore, EJB claims it did not have access to IAP's personnel records until this lawsuit. *Id.* Plaintiff has not presented any evidence to show that the EJB hiring committee consulted with anyone at IAP, or was even aware of the previous complaint filed by Ms. Jackson. *Id.* Ms. Jackson admits that she has no actual knowledge that EJB consulted with anyone at IAP regarding hiring decisions. [Jackson Tr. 214:12-16] She suggests only that it would have been "sensible" for EJB to do so. [Jackson Tr. 214:16-18]

Additionally, Plaintiff claims her union's contract with IAP required her to be among those rehired due to her relative seniority. [Amended Complaint Dkt. # 20, Dkt. # 57] The only evidence she has brought of this continuing contract, however, is hearsay in the form of a newspaper article. [Decl. of Jackson Ex.1 Dkt. # 58] Ms. Jackson has not presented a persuasive legal argument as to how EJB was bound by her interpretation of a union contract signed by IAP.

Both EJB and Michael Hennessey, Ms. Jackson's union representative at the time IAP lost the base contract, deny that the union contract carried over during the transition from IAP to EJB. [Hennessey Decl.¶ 8 Dkt. # 47, Dkt. # 61] Nor does Plaintiff's evidence overcome EJB's evidence that applicants were hired based on relative skills and experience, not seniority. [Dkt. # 50, Dkt. # 61] The plaintiff has not met her burden of showing that EJB's given reasons are mere pretext for retaliatory discrimination. Finally, the four year time span between her protected activity and EJB's rehirings is too attenuated to support a claim of retaliation against EJB. *See Yartzoff*, 809 F.2d at 1376. Plaintiff's claim of retaliation against EJB is therefore DISMISSED.

### 3. Gender Discrimination - Disparate Treatment and Impact

#### a. Claims against IAP

Defendant IAP moves for summary judgment on Plaintiff's claims of gender discrimination based on disparate treatment and impact. [Dkt. # 45] Ms. Jackson claims that she was the subject of disparate treatment by defendant IAP when she was denied the promotion she sought on the basis of her gender and when she was

subjected to adverse scheduling. [Amended Complaint Dkt. # 20] IAP presents evidence that Ms. Jackson was not hired as the bus driver trainer because she was not qualified for the position and that she was not scheduled any differently than similarly situated male employees. [Dkt. # 45]

To establish gender discrimination based on disparate treatment or impact, the plaintiff must show that (1) she was a member of a protected class, (2) she was qualified for a position or performing satisfactory work, (3) she was subject to an adverse employment decision, and (4) people outside of her protected class were treated better. *Mondero v. Salt River Project*, 400 F.3d 1207, 1211 (9th Cir. 2005). In *Costa v. Desert Palace*, the Ninth Circuit further explained that whether discriminatory intent was the only motive for the disparate treatment or if it was part of a mixture of motives does not change the theory of liability; the plaintiff must still show by a preponderance of the evidence that the adverse employment action was "because of" discrimination. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856-57 (9th Cir. 2002).[5] Ms. Jackson is a member of a protected class.

Ms. Jackson claims that she was specifically told by her supervisor at IAP that she would not be eligible for the bus driver trainer position because of her gender. [Amended Complaint Dkt. # 20, Dkt. # 57] A male was eventually hired for the position. [Decl. of Jackson ¶ 21 Dkt. # 58] IAP denies that Ms. Jackson was excluded from the position because of her gender, and claims that she was simply not qualified for the position. [Dkt; # 45] Ms. Jackson admits that at the time she applied for the trainer position, she had not yet received the required training for the job. [Jackson Tr. 228:23-25] As Ms. Jackson has not shown that she was qualified for the position at the time of hire, she cannot meet the second element of her claim as a matter of law.

Ms. Jackson claims that she was subject to gender discrimination when IAP twice replaced her with a male driver for a day's bus run. [Amended Complaint Dkt. # 20] IAP argues that the run replacements were made to insure that all part-time drivers worked approximately equal hours. [Dkt. # 45] Ms. Jackson admits that she was only replaced twice between 1999 and 2006, and never knew the reason for the replacement. [Jackson Tr. 31:2-13] As Ms. Jackson was only replaced twice during a six year period, and did not see any indication of discrimination, there is no evidence these isolated incidents were the result of gender discrimination.

Plaintiff also claims that she was subject to disparate treatment when she was consistently assigned "worse" routes and shifts than similarly situated male drivers. [Amended Complaint Dkt. # 20] Ms. Jackson

---

[5]Also see Ninth Cir. J. I. 10.1(a).

claims that she was assigned the guard change route more often than other part-time drivers with security clearances. [Amended Complaint Dkt. # 20] IAP argues that all part-time employees were given split shifts and, if properly cleared, frequently assigned to the guard change route. [Dkt. # 45] Ms. Lee asserts that all part time drivers with security clearances were assigned to the guard change runs, and that each run required two drivers. [Decl. of Lee ¶ 10 Dkt. # 48] The result was that every properly cleared part-time driver usually performed the guard change run once a week. *Id*. Ms. Lee also testifies that she herself performed the guard change run when there was need. [Decl. Of Lee ¶ 9 Dkt. # 48] Ms. Jackson disputes that the guard change run was equally distributed, but has not presented any evidence of this. [Dkt. # 56, Dkt. # 57] She also admits that all part time drivers had similar split-shift schedules except for Tonya, another woman. [Jackson Tr. 51:1-9] Ms. Jackson has not presented any evidence that equally situated employees outside of her protected class were given fewer split shifts or assigned to the guard change run less often.

IAP claims that Ms. Jackson was not assigned certain routes (such as the "Indian Island" run) because of Ms. Jackson's requests or complaints by Naval personnel, not gender discrimination. [Dkt. # 45] Ms. Jackson denies that she requested removal from the routes. [Dkt. # 56] Ms. Jackson, however, admits that other women were assigned to these routes. [Jackson Tr. 33:19-35:1] Ms. Jackson also admits that the one male she claims was treated more favorably was in fact treated better than all other employees, both male and female, and that she herself was scheduled the same as other male part-time drivers. [Jackson Tr. 50:12-51:4] Plaintiff has not met her summary judgment burden, and her disparate treatment claim on the basis of scheduling is DISMISSED.

Plaintiff claims she was subject to disparate treatment through a lack of appropriate rest rooms along the guard change route. [Amended Complaint Dkt. # 20] Ms. Jackson also claims alternative restroom facilities, such as the port-a-potties along the route, were in such disrepair as to be unusable. [Dkt. # 57] IAP replies that adequate facilities were available for women on the route. [Dkt. # 45]

Mr. Hennessey investigated Ms. Jackson's restroom complaints, and was unable to substantiate any of the facts she alleged. [Decl. of Henessey ¶5-7] Ms. Lee seconded Mr. Hennessey's observations. [Decl. of Lee ¶ 12] Plaintiff's description of restroom facilities for women on the guard change route fails to show that she was subject to disparate treatment. [Decl. of Jackson ¶ 28 Dkt. # 58] While Ms. Jackson may have disliked being escorted to the restroom by a marine, Bangor Submarine Base is a high security military installation, and it is

1    not unreasonable for non-military personnel to be forbidden to wander about on their own or remain

2    unsupervised. Ms. Jackson's complaints about the guard change run appear to boil down to the fact that she did

3    not like to perform some of the activities required by her job.

4           Plaintiff's claim of disparate treatment against Defendant IAP is DISMISSED.

5           Defendant IAP moves to dismiss Plaintiff's claim of disparate impact. [Dkt. # 45] Ms. Jackson claims

6    that she was subject to disparate impact because of the scheduling practices of IAP. [Amended Complaint Dkt.

7    # 20] IAP argues that the scheduling practices of the transportation department did not have a gender-

8    discriminatory impact. [Dkt. # 45] Ms. Jackson's deposition testimony supports IAP's position: she admits that

9    the routes she desired were assigned to individuals of both genders and that she felt everyone was treated better

10   than her, including other women. [Jackson Tr. 33:19-35:1, 78:9-15] As there is no evidence that IAP's

11   workplace policies had a disparate impact on women, there is no issue of material fact. Plaintiff's disparate

12   impact claim is DISMISSED.

13          Ms. Jackson has additionally failed to show that IAP discriminated against her by hindering her rehire

14   with EJB. This is discussed above under Plaintiff's retaliation claims, and the same reasoning applies to her

15   claims of disparate treatment. Plaintiff has not presented any evidence from which a reasonable trier of fact could

16   find that IAP hindered her rehire with EJB because of her gender. Ms. Jackson claims that her supervisor Mr.

17   Kirchoffner went out of his way to assist other IAP employees by passing out EJB employment applications

18   while not assisting her, but she admits that he had placed an application for EJB in her mailbox and had

19   encouraged her to apply for a position with EJB. [Jackson Tr. 189:19-21, Dkt. # 45] Ms. Jackson further claims

20   that Ms. Lee told her that she did not need to work because Ms. Jackson's husband was employed. [Dkt. # 57]

21   Even if true, however, this is not relevant to the hiring process, as Ms. Lee was not a supervisor and there is no

22   evidence that she had any input on who EJB chose to hire for the open positions. In any case, all other female

23   drivers who applied for positions with EJB were rehired. [Dkt. # 45] As Ms. Jackson cannot show that IAP was

24   gender-biased or in any way influenced the hiring decisions of EJB, her claim of disparate treatment on the basis

25   of hiring is DISMISSED.

26

27          **b. Claims against EJB**

28

Defendant EJB moves for Summary Judgment on plaintiff's claims of disparate treatment and impact based on the rehiring process. Ms. Jackson claims EJB, upon taking over Bangor Submarine Base's transportation contract, rehired similarly situated male drivers but not her, due to gender discrimination. [Dkt. # 56] EJB responds that all drivers were hired based on relative experience and skill. [Dkt. # 50] Indeed, the evidence shows that EJB rehired female drivers as well as male drivers. [Dkt. # 50] Plaintiff attempts to distinguish this by arguing that no part-time female drivers were rehired. [Decl. of Jackson ¶ 13 Dkt. # 58] Ms. Jackson, however, was the only part-time female to apply at that time, and female part-time drivers were in fact hired after the first round of hires was completed. [Dkt. # 50, Dkt. # 61] There is no evidence that EJB discriminated against Ms. Jackson because of her gender. That Ms. Jackson could not locate the later job postings for the part-time positions is not evidence from which a reasonable trier of fact could find that EJB discriminated against her.

Plaintiff's claims that she was more experienced than the other rehired part-time drivers rest on her argument of relative seniority, noting that some of the rehired drivers were initially hired by IAP after she had already been employed. [Decl. of Jackson ¶ 23 Dkt. # 58, Dkt. # 57] This again does not address any additional skills or other relative experience these drivers may have had that made them better fits for the offered positions. No evidence has been submitted regarding the skills or other experience of these drivers, and the Plaintiff has not met her burden on summary judgment. Plaintiff's claim of disparate treatment against EJB is DISMISSED.

**V. CONCLUSION**

Defendants IAP and EJB have met their summary judgment burden of providing non-pretextual reasons for their actions. Plaintiff's sexual harassment claim is time barred, and the span between her protected activity and any alleged retaliation is too attenuated to support her retaliation claims. Furthermore, Plaintiff has provided no evidence that any of the actions taken by IAP or EJB were retaliation for her 2001 sexual harassment complaint. She has not provided any evidence of a gender hostile work environment. She has also not provided evidence that she was subject to discriminatory treatment or impact. Plaintiff cannot meet her burden on summary judgment on any of her claims, and Defendant' motions are **GRANTED**. [Dkt. # 45, Dkt. # 50] Plaintiff's claims are **DISMISSED**.

**IT IS SO ORDERED.**

Dated this 26th day of September,  2008.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE